UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

QUALITY PLUS SERVICES, INC.

        Plaintiff,

v.                                        Civil Action No: **3:18-cv-00454**

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.

<u>Serve</u>:  Corporation Service Company
        Registered Agent
        100 Shockoe Slip, Second Floor
        Richmond, Virginia 23219

        Defendant.

**COMPLAINT**
**(Declaratory Judgment and Breach of Contract)**

Plaintiff Quality Plus Services, Inc. ("Plaintiff" or "QPS"), by counsel, by and for its complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("Defendant" or "National Union"), states and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from National Union's bad faith denial of insurance coverage related to commercial crime losses suffered by QPS.

2. The denial of coverage was made despite QPS's timely payment of all premiums, timely notice of said occurrences, and the occurrences all coming within the policy period and coverages at issue.

3. The multiple occurrences of fraud-crimes against QPS that resulted in direct losses were the very type of occurrences contemplated and covered by the in-force policy for which QPS paid premiums.

4. National Union has, in bad faith, breached its insurance policy by failing to pay for the direct losses incurred by QPS, which fall squarely within the coverages extended by National Union, and to which no exclusions apply.

5. In addition, QPS seeks a declaratory judgment that National Union has acted in bad faith, that the coverages afforded by the in-force policy apply to the losses, that the losses comprise multiple occurrences, and that no exclusions apply, thus rendering National Union liable for payment to QPS under the policy for the losses, minus any applicable deductible.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1332 as this suit is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because National Union entered into a contract of insurance with Plaintiff in this District and Division and Defendant is subject to jurisdiction in this District and Division.

## PARTIES

8. Plaintiff, Quality Plus Services, Inc., is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business in Petersburg, Virginia, and a named insured under a PrivateEdge Plus Policy issued by Defendant, National Union.

9. Defendant, National Union Fire Insurance Company of Pittsburgh, Pa., is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the State of New York.

10. National Union is and was at all relevant times a corporation licensed and qualified to do business in the Commonwealth of Virginia.

## FACTS

I. THE INSURANCE POLICY

11. At all relevant times, QPS was insured by a National Union Private Edge Plus Policy, Policy Number 01-406-01-90, covering the term April 1, 2017 to April 1, 2018 (the "Policy"). A true and correct copy of the Policy is attached as **Exhibit A**.

12. The Policy expressly provides for Commercial Crime Insurance via its Crime Coverage Section.

13. More specifically, the Crime Coverage Section insures losses due to Computer Fraud (Insuring Agreement 1.F.) and Funds Transfer Fraud (Insuring Agreement 1.G.).

14. The Policy's Computer Fraud coverage carried a per occurrence limit of liability of $1,000,000.

15. The Policy's Funds Transfer Fraud coverage also carried a per occurrence limit of liability of $1,000,000.

16. QPS satisfied all of its obligations under the Policy including, but not limited to, the timely payment of the annual premium and the proper reporting of its losses under the Policy.

II. THE OCCURRENCES

17. On January 4, 2018 QPS became aware that it fell victim to multiple occurrences of criminal fraud resulting in a combined loss of $1,633,018.00.

18. Referred to by some as spoofing and others as social engineering fraud, the occurrences at issue consisted of emailed fraudulent payment instructions initially received by QPS—which were purported to have been transmitted by an employee of QPS, namely, its Operations Manager, Aaron Gay—but were actually fraudulently transmitted by unknown persons without the knowledge or consent of QPS or its employees.

19. Each of the e-mails adopted the form, intonation, and direction typical of the handling of QPS accounts and were fraudulently engineered to appear to be from an employee authorized to give payment instructions and sent to another who was authorized to initiate payment transactions.

20. On December 19, 2017, an email fraudulently engineered to appear to be from Operations Manager Aaron Gay was initially received by QPS directing payment of $92,000.00 on a phony invoice to purported recipient Bonachon Enterprises, via Recipient Bank Banco Regional De Monterrrey, to be delivered by funds transfer from QPS's SunTrust account. The transfer of $92,000.00 was made on the same day, causing QPS to suffer a loss in this amount resulting directly from the fraudulent instruction and computer fraud.

21. On December 27, 2017, an email fraudulently engineered to appear to be from Operations Manager Aaron Gay was initially received by QPS directing payment of $97,384.00 on a phony invoice to purported recipient Bonachon Enterprises, via Recipient Bank Banco Regional De Monterrrey, to be delivered by funds transfer from QPS's SunTrust account. The transfer of $97,384.00 was made on December 28, 2017, causing QPS to suffer a loss in this amount resulting directly from the fraudulent instruction and computer fraud.

22. On December 29, 2017, an email fraudulently engineered to appear to be from Operations Manager Aaron Gay was initially received by QPS directing payment of $372,018.00 on a phony invoice to purported recipient Grand Atlantis Limited, via Recipient Bank Dah Sing Bank, to be delivered by funds transfer from QPS's SunTrust account. The transfer of $372,018.00 was made on the same day, causing QPS to suffer a loss in this amount resulting directly from the fraudulent instruction and computer fraud.

23.     On January 3, 2018, an email fraudulently engineered to appear to be from Operations Manager Aaron Gay was initially received by QPS directing payment of $549,633.00 on a phony invoice to purported recipient Hinhinghang Trading Co. Ltd., via Recipient Bank Industrial and Commercial Bank of China, to be delivered by funds transfer from QPS's SunTrust account.  The transfer of $558,623.00 was made the same day, causing QPS to suffer a loss in this amount resulting directly from the fraudulent instruction and computer fraud.

24.     On January 4, 2018, an email fraudulently engineered to appear to be from Operations Manager Aaron Gay was initially received by QPS directing payment of $512,993.00 on a phony invoice to purported recipient HK Futuolong Co. Ltd., via Recipient Bank Hang Seng Bank Limited, to be delivered by funds transfer from QPS's SunTrust account.  The transfer of $512,993.00 was made on the same day, causing QPS to suffer a loss in this amount resulting directly from the fraudulent instruction and computer fraud.

25.     Upon information and belief, each of the five transfers of funds was initiated and carried out by different persons.

26.     These five transfers of funds between December 19, 2017 and January 4, 2018 are collectively referred to herein as "QPS Losses".

27.     The QPS Losses did not involve a purchase or exchange of any kind by QPS.

28.     All of the QPS Losses resulted directly from fraudulent instructions from the socially engineered emails initially received by QPS.

29.     On or about January 4, 2018 QPS became aware of the scheme and immediately took steps to prevent further transfers and attempted to recover the funds lost.

30.     QPS contacted its bank, SunTrust, to issue wire recall notices for each separate transfer.

31. QPS also reported the occurrences to the local police, the Hong Kong police, the FBI and the U.S. Secret Service.

32. To date, QPS has not recovered any of the QPS Losses.

33. On February 2, 2018, as directed by the Policy documents, QPS submitted a sworn proof of loss to AIG Claims, Inc. ("AIG"), the authorized representative of National Union, to assert a claim under the Policy for the losses incurred. A true and correct copy of the Proof of Loss is attached hereto as **Exhibit B**.

34. By letter dated March 19, 2018, National Union through AIG conveyed a complete denial of coverage for the occurrences listed above. A true and correct copy of National Union's coverage denial letter is attached hereto as **Exhibit C**.

III. POLICY COVERAGES APPLICABLE TO THE LOSSES

35. Two separate Crime Coverage sections under the Policy provide coverage for the QPS Losses, namely "Insuring Agreement 1.F. - Computer Fraud Loss" and "Insuring Agreement 1.G. - Funds Transfer Fraud Loss".

36. Paragraph 1(F) within the Crime Coverage portion of the Policy, the Computer Fraud Insuring Agreement, obligates National Union as follows (bolded terms in the original):

> The **Insurer** will pay for loss of or damage to **Other Property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **Premises** or **Banking Premises**:
>
> (i) to a person (other than a **Messenger**) outside those **Premises**; or
> (ii) to a place outside those **Premises**.

37. Paragraph 1(G) of the Crime Coverage portion of the Policy, the Funds Transfer Fraud Insuring Agreement, obligates National Union as follows (bolded terms in the original):

> The **Insurer** will pay for loss of **Funds** resulting directly from a **Fraudulent Instruction** directing a financial institution to transfer, pay or deliver **Funds** from the **Insured's Transfer Account**.

38. Paragraph 2(h)(iii) of the Crime Coverage portion of the Policy defines **Fraudulent Instruction**, in relevant part, as:

> an electronic, computer, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by the **Insured** which purports to have been transmitted by an **Employee** but which was, in fact, fraudulently transmitted by someone else without the **Insured's** or the **Employee's** knowledge or consent.

39. These portions of the Policy expressly and unambiguously provide insurance coverage for the totality of the QPS Losses incurred in each of the occurrences, less any applicable deductible.

40. No Policy exclusions apply to the occurrences.

41. Rather than comply with its unambiguous obligations under the Policy, National Union has either blatantly ignored its own language contained in the Policy, or applied a wholly unreasonable reading of Policy to avoid coverage.

42. National Union, before summarily denying coverage, failed to make a reasonable investigation of the facts and circumstances underlying QPS's claim.

43. There are no known facts which would negate coverage.

44. This unreasonable refusal to apply the coverages for which QPS has paid premiums was made in bad faith.

## COUNT ONE
## <u>DECLARATORY JUDGMENT</u>

45. Plaintiff incorporates and reallege paragraphs 1 through 44 as though fully set forth herein.

46. By denying coverage under the Policy, National Union has breached its contract with Plaintiff. National Union has acted in bad faith by denying coverage for multiple occurrences of commercial losses attributable to fraud which fall within the Policy terms for coverage and for which no exclusion applies.

47. Plaintiff requests this Court to declare the rights of the parties under the Policy to determine whether coverage exists for these occurrences resulting in the QPS Losses.

48. This conflict constitutes an actual controversy subject to a binding adjudication by this Court pursuant to 28 U.S.C. § 2201.

WHEREFORE, Plaintiff prays this Court order the following relief:

a. Determining and adjudicating the rights and liabilities of the parties under QPS's policy of insurance;

b. Declaring that each occurrence is separate and distinct and subject to its own limitation of liability;

c. Declaring that the occurrences are covered acts for which National Union must pay for the monetary loss incurred by QPS under the terms and conditions of the Policy;

d. Declaring that National Union's denial of coverage was in bad faith; and

e. For such other and further relief as is just and equitable including but not limited to the costs and attorneys' fees permitted under Va. Code § 38.2-209.

## COUNT TWO
## BREACH OF CONTRACT

49. Plaintiff incorporates and realleges paragraphs 1 through 48 as though fully set forth herein.

50. A valid and enforceable policy of insurance was entered into by the parties.

51. Plaintiff has fully performed its obligations under the policy of insurance, including timely payment of all premiums due and timely reporting of all occurrences of loss under the Policy.

52. Each occurrence took place during the effective term of the Policy and was a covered loss for which no exclusion applies.

53. There has been no breach of the Policy by QPS.

54. No reasonable interpretation of the Policy permits denial of coverage for the QPS Losses incurred.

55. By denying coverage and by failing and refusing to pay for the QPS Losses associated with each occurrence, National Union has breached its obligations to QPS in bad faith and is responsible for the payment of the losses, and other costs and attorneys' fees pursuant to Va. Code § 38.2-209.

WHEREFORE, Plaintiff, Quality Plus Services, Inc., demands judgment against National Union Fire Insurance Company of Pittsburgh, Pa for payment for each of the losses incurred in each and every occurrence, minus any applicable deductible, as well as all court costs and attorneys' fees incurred by Plaintiff because of National Union's bad faith denial of coverage pursuant to Va. Code § 38.2-209, pre-judgment interest, post-judgment interest and such other and further relief as this Court may deem just and proper.

TRIAL BY JURY IS HEREBY DEMANDED.

Dated: July 2, 2018                            Respectfully submitted,

                                              /s/ Kristie G. Haynes
Kristie G. Haynes (VSB 41466)
General Counsel
Quality Plus Services, Inc.
2929 Quality Drive
Petersburg, Virginia 23805
804.863.0191
804.863.0284 facsimile
KristieH1@QPSisbest.com

Nathan A. Colarusso (VSB 72840)
Assistant General Counsel
Quality Plus Services, Inc.
2929 Quality Drive
Petersburg, Virginia 23805
804.863.0191
804.863.0284 facsimile
NateC1@QPSisbest.com


ATTORNEYS FOR PLAINTIFF